UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF IOWA

CARRIE MILLER,,                                       Case No.: 3:12-cv-00124-JEG

        Plaintiff,

vs.                                                          REPORT AND RECOMMENDATION

CAROLYN COLVIN, COMMISSIONER OF THE
SOCIAL SECURITY ASNISTRATION

        Defendant

       This case has been referred to the undersigned U.S. Magistrate Judge, Recall Status, for purposes of

Report and Recommendation pursuant to 28 U.S.C. 636 on plaintiff Carrie Miller's (Miller) Complaint (Clerk's

No. 1) in which she seeks review of the Social Security Commissioner's decision denying her application for Social

Security Disability Benefits (DIB), and Supplemental Security Income (SSI) benefits, finding a lack of disability.

See, Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. 401-434, 1381-1383(f). This Court's review

of the Commissioner's final decision, including this Report and Recommendation, is done pursuant to 42 U.S.C.

405(g), 1383(c)(3)

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

       Miller protectively filed an application for SSI on July 13, 2005, and alleging that she had become

Disabled on June 15, 2005. That claim was denied initially on December 1, 2005, and was again denied after

Reconsideration on May 3, 2006. A written request for hearing was filed by Miller on May 19 2006, which was

granted. Hearings were held on both May 14, 2008, and September 12, 2008, in Clearwater, Florida. Miller

appeared at, and testified in, both of those hearings. Testifying at the September 12, 2008, hearing were

both David Kazar, M.D., and independent medical expert, and Jeffery E. Carlisle, a vocational expert. The

Administrative Law Judge (ALJ) denied Miller's application on November 5, 2008, determining that she was

capable of performing past relevant work as a laundry worker, cleaner/housekeeper and hand packager. Upon

REPORT AND RECOMMENDATION - 1

1    request for review filed by Miller, the Appeals Council on February 4, 2009, vacated the ALJ's decision and

2    remanded the case to the ALJ requesting that he obtain evidence from a vocational expert to clarify the effect of

3    the assessed limitations on Miller's occupational base. At a hearing on May 27, 2009, also in Clearwater, Florida,

4    Miller appeared and testified, as did Dr. Steven E. Simon, an impartial vocational expert. Miller was represented

5    during all hearings by Arlene G. Baird, a non-attorney. Miller is 45 years old, born May 4, 1960, and is considered

6    a younger individual (age 45-49). At the time of that hearing Miller was residing with her boyfriend in Florida,

7    and not employed. She has not worked since hearings held in her case on both May 14, 2008 and September 28,

8    2008. Miller claims she is disabled and unable to work because of a number of ailments, including, but not limited

9    to left shoulder and left knee problems, carpal tunnel syndrome (CTS) on the left side, memory loss, constant low

10    back pain, unspecified heart problems, inability to lift more than 20 pounds and a bipolar disorder. At the time of

11    the hearing Miller was 49 years old, fluent in English, and did not possess a high school diploma.

12                **II. FINDINGS OF THE COMMISSIONER**

13        On October 15, 2009, the ALJ denied, again, Miller's application, finding, inter alia, that:

14        1. Consistent with the Appeals Council's remand order and Miller's earnings record, she has never

15            engaged in substantial gainful activity "much less since July 13, 2005, the application date". (20 CFR

16            416.971, et seq.)

17        2.Miller has severe impairment; history of mild to moderate disk bulge at C3-4 with mild canal stenosis

18            and disk bulge with osteophyte at C6-7, minor degenerative changes of the acromioclavicular (AC)

19            joint of the right shoulder, hypertension with a history of atypical chest pain, depressive disorder and

20            history of alcohol and cocaine abuse in remission. (20 CFR 416.920(c)).

21        3. Miller did not have an impairment or combination of impairments that meets or medically equals

22            one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d),

23            416.925 and 416.926.

24        4. Upon consideration of the complete record the ALJ determined Miller had the residual functional

25

REPORT AND RECOMMENDATION - 2

capacity to perform a limited range of light work as defined in 20 CFR 416.967(a) except that she can frequently lift up to 10 pounds and occasionally up to 20 pounds; she can sit 8 hours at a time in an 8-hour workday; she can stand/walk a total of 1 hour each time during an 8-hour workday; she had no significant restrictions with the use of her hands except for frequently reaching overhead and in all directions; she had no limitations with the use of her lower extremities to operate foot controls except she would be limited to frequently; she was limited occasionally in her postural activities except she must avoid climbing ladders or scaffolds; her pain was not at a level of severity to significantly limit her activities as given; she would have some moderate limitations in her ability to interact appropriately with the public, supervisors or co-workers and to respond appropriately to usual work situations and to changes in routine work setting.

5. Miller has no past relevant work at the substantial gainful level (20 CFR 416.965),

6. Miller was born on May 4, 1960, and was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. Miller has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because Miller does not have past relevant work (20 CFR 416.968).

9. Considering Miller's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Miller can perform (20 CFR 416.969 and 416.969(a)).

10. Miller has not been under a disability, as defined in the Social Security Act, since July 1, 2005, the date the application was filed (20 CFR 416.920(g)).

### III. STANDARD OF REVIEW

A district court "will affirm the ALJ's findings if supported by substantial evidence on the record as a

REPORT AND RECOMMENDATION - 3

1   whole". Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th

2   Cir.2009)). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as

3   adequate to support a conclusion.'" Renstrom v. Astrue, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting Moore v.

4   Astrue, 572 F.3d 520, 522 (8th Cir. 2009)). A court must look at "evidence that supports and detracts from the

5   ALJ's decision," but '"[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent

6   positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the

7   ALJ's decision.'" Cuthrell v. Astrue, 702 F.3d 1114, 1116 (8th Cir. 2013) (quoting Perkins, 648 F.3d at 897).

8   "Even if substantial evidence supports a contrary outcome, [a court] may not reverse so long as the Commissioner's

9   decision also is supported by substantial evidence". Randolph v. Barnhart, 386 F.3d 835, 839 (8th Cir .2004) ( citing

10  Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004)).

11          [A court] will not disturb the denial of benefits as long as the ALJ's decision falls within

12          the available zone of choices. An ALJ's decision is not outside the zone of choice simply

13          because [the court] might have reached a different conclusion had [it] been the initial

14          finder of fact.

15  Buckner v. Astrue, 646 F. 3d 549, 556 (8th Cir. 2011) ( quoting Bradley v. Astrue, 528 F. 3d 1113, 1115 (8th Cir.

16  2008)). The Court proceeds informed by that disciplined standard of review.

17

18                  IV. Discussion

19          Miller argues that the ALJ erred in three different ways in finding that she is not disabled, and thus

20  ineligible for benefits:

21                  1. The ALJ failed to consider whether the Medical-Vocational Guidelines (the Grids)

22          would apply to Miller when taking her age into consideration at the time the decision was rendered.

23                  2. Even though the ALJ found Miller was capable of performing light work, the ALJ adopted

24          the hypothetical given the vocational expert at the hearing as the Residual Functional Capacity (RFC)

25          which was more consistent with sedentary work.

REPORT AND RECOMMENDATION - 4

3. The RFC assessment made by the ALJ with regard to Miller's mental impairments is deficient because it was determined by utilizing the factors set forth in 20 CFR 416.920(a) rather than determining Miller's ability to perform basic work related activity.

In response the Commissioner advances the following positions:

1. The ALJ did not err in finding that Miller was 49 years old at the time of the decision instead of utilizing the Grids using an age of 50 years old.

2. The ALJ's determination that Miller can perform "other work" is supported by testimony from the vocational expert.

3. The ALJ followed regulatory framework in evaluating the impact of Miller's mental impairments in his sequential evaluation of her claims.

The record in this case is voluminous. The parties have filed 932 pages of administrative records, medical reports, evaluations, re-evaluations, studies, assessment testing and opinion statements, etc. See generally, Clerk's Nos. 7 (pages 1-300); 7-1 (pages 1-338) and 7-2 (pages 1-294). Unfortunately, those filings contain numerous duplications which detract from the record, and certainly make the work of this Court more difficult.

While the decision currently being appealed by Miller was entered on October 15, 2009, by Administrative Law Judge Edwin W. Tyler (Clerk's No. 7, pages 47-71), that order was just one of several decisions by ALJ's regarding applications filed by Miller for disability benefits beginning, at least, in 2002.

Reference is made to Miller's long history of filing claims for benefits, in part, because of her arguments that the ALJ erred by not considering her age to be 50, or greater, and thus requiring use of the Grids in determining whether Miller was disabled. The fact remains, and based upon the record, Miller was born November 4, 1960, and at the time of the ALJ's decision on October 15, 2009, she had not reached the age of 50. Here Miller does not cite this Court to any relevant decisions by Eighth Circuit Court of Appeals.

Certainly the ALJ is precluded from automatically excluding Miller from consideration regarding her age, see generally, 20 CFR 416.963(b), but at the same time that ALJ is also not precluded from considering

REPORT AND RECOMMENDATION - 5

1    Miller's actual age at all relevant times during his consideration of her application. Byes v. Astrue, 687 F.3d 913

2    (9th Cir. 2012). Nothing in this record supports the fact that Miller, having filed disability applications on

3    several different dates, when she was not even close to the age of 50, but then by operation of passage of time,

4    she is close to that age when all the appeals are concluded, and the final decision is rendered, she can now argue

5    that the ALJ erred in failing to consider the Grids. Again, Miller cites no relevant case law supporting that con-

6    tention.

7          This Court finds that the ALJ properly applied 20 CFR pt. 404, subpt. P, app. 2, Section 202.10.

8    The Commissioner is correct, in the opinion of this Court, that Miller's age is not the deciding factor as to

9    whether she is entitled to benefits. Nothing in this record, especially considering the opinions of the examining

10   physicians and clinicians, establishes that Miller is in fact disabled, regardless of her age at the time of the last

11   hearing. See, generally, Clerk's Nos. 7-1 (pages 606, 628-639, 671-678); 7-2 ( pages 767-797, 799-814, 857-858).

12         On April 15, 2009, Dr. Gopal Chalavarya noted in his report that Miller had uncontrolled hypertension,

13   but there was also a finding of atypical chest pain in the past, a negative work up in the hospital "recently", a

14   normal stress test and an echocardiogram was performed. (7-1, page 606). On July 3, 2008, Dr. Adam Greenfield

15   performed a Social Security Examination. (7-1, pages 628-630). In his discussion of that examination, Dr.

16   Greenfield stated in pertinent part that:

17          The patient's height, weight, blood pressure, pulse rate and medications were reviewed

18          and I find no problems in this region....Description of major joints: Patient does not

19          have any pain, swelling, heat, redness or signs of inflammation of the upper and lower

20          extremities. Findings related to spine: Patient does not have sensory, motor or reflex

21          findings that are abnormal. Patient does have full range of motion of the cervical and

22          lumbar region. Under gait: Patient walks with a normal gait and does not use assistive

23          devices. Patient does not have any muscle spasms and tenderness....Patient does not

24          have any problems with grip strength, dexterity or fine manipulation with grip strength

25          of 5/5 bilaterally. Patient does not have any problems buttoning or unbuttoning shirts,

REPORT AND RECOMMENDATION - 6

1    holding cups, pencils, etc.  Patient does not have problems with motor deficits of the

2    upper or lower extremities with 5/5 bilaterally. In summary, patient has high blood

3    pressure borderline with medications. Patient has not had any complications due to

4    high blood pressure such as myocardial infarction or stroke. Patient has bipolar

5    disorder with anxiety which is her major issue where patient is still having difficulty

6    sleeping....

7            Even more revealing is the report from Dr. Suarinkumar Shah dated March 18, 2009, (7-1 pages

8    608-609) wherein it was noted, *inter alia,* that, " The patient is....without any siginificant past medical

9    history besides chronic backache....." That report, compiled due to admission to the emergency room at

10   Morton Plant North Bay Hospital, New Port Richey, FL, noted negative findings in almost all of her systems:

11   no anxiety, no depression, a denial of smoking and alcohol use or recreational drug use; in her central nervous

12   system, cardiovascular system, pulmonary, gastrointestinal, musculoskeletal, etc.

13           In addition, Dr. Shah stated regarding the physical examination performed on Miller that she was

14   "not in any acute distress, alert, awake, oriented x3, lying down in bed comfortably." The CT scan of the

15   head was negative; as was the chest x-ray. The cardiology consultation  performed by Dr. Hrishi Patel, during

16   that same ER visit (7-1, pages 610-612) was also essentially negative. Dr. Patel noted that his impression was

17   that her "presentation might be related to panic disorder".

18           Also of interest is a Physical Residual Functional Capacity Assessment which was dated

19   December 1, 2005 (7-2, pages 767-774), and which noted under the heading of "Symptoms" found that

20   Miller had high blood pressure and pain from motor vehicle accident injuries in mainly the left lower

21   extremity  and that severity or duration of these symptoms was not disproportionate  to the expected severity

22   or expected duration on the basis of Miller's medically determinable impairments. That Assessment also

23   noted that "claimant" should be capable of work within these limits."

24

25

REPORT AND RECOMMENDATION - 7

1    Nothing in this record supports any record made, or offered, by Miller that the Grids applied in her case. A

2    review of this record, and the transcript demonstrates that Miller never argued application of the Grids, or

3    challenged any evidence presented to the ALJ because the Grids were not utilized.

4            The first point of error that Miller assigns to the ALJ's decision under review here fails for lack of legal

5    and factual support in the record. Likewise, based on this record, there is no basis for this Court to remand

6    this case to the ALJ to determine whether the Grids should be applied. This Court does not believe that based on

7    the medical record in this case, and timing of the filings of applications for benefits by Miller, this case can

8    be converted to one which conveniently, because of the passage of time, becomes resolved by default to

9    a consideration of the Grids. This argument fails, again, because of the lack of support in the record that

10   Miller is in fact disabled.

11           Miller's second assignment of error also fails. She again seeks to connect the lack of consideration

12   of the Grids by the ALJ to an erroneous determination by the ALJ, she claims, that she is capable of performing

13   sedentary work. And again, Miller hinges this argument on her assertion that she should have been considered

14   to be 50 years of age by the ALJ.

15           At the hearing Dr. Steven Simon a vocational expert testified. Miller did not object to his qualifications

16   through her representative present with her at the hearing on May 27, 2009. And, in fact, Miller's representative

17   did not cross examine Dr. Simon, even after being offered the opportunity by the ALJ. See, Hearing Transcript,

18   Clerk's No. 7-2, pages 15 and 20.

19           Dr. Simon was testifying as an impartial witness. He reviewed the exhibits in the case, and agreed that

20   Miller had no past relevant work (7-1, page 881). Very telling as to the issues asserted by Miller in this appeal

21   is that Dr. Simon, without objection from Miller, testified that Miller was a "younger individual with a  limited

22   education", and without relevant work and transferable skills'. (7-2, page 882). There was no attempt or effort

23   by Miller to establish through the impartial vocational expert the foundation or basis for her assertions now

24   that the ALJ should have utilized the Grids.

25

REPORT AND RECOMMENDATION - 8

1   Dr. Simon testified in his hypothetical that a person in the same or similar situation as Miller
2   could perform sedentary, semiskilled work as a sorter, but that he would utilize the very simplest of jobs in that
3   category which would essentially be unskilled. (7-2, page 883). He cited the Directory of Occupational Titles
4   (DOT) noting that there were 225 of such jobs available in the Tampa Bay area, 1,400 jobs in Florida, and
5   approximately 22,000 such jobs nationwide. He was also of the opinion that Miller was qualified to be an order
6   clerk, food and beverage, which is sedentary, unskilled work. He testified there were 400 such jobs in the Tampa
7   Bay area; approximately 2,200 statewide, and about 32,000 nationwide.

8   Additionally he testified Miller could be a reception clerk, sedentary, semiskilled, but even if he limited
9   her to an unskilled definition, utilizing only the very simplest jobs, there would be approximately 320 such jobs
10   in the Tampa Bay area, about 2,000 such jobs statewide and about 30,000 jobs nationwide.

11   There is nothing in this record that indicates that the ALJ's reliance upon the impartial vocational
12   expert, Dr. Simon was incorrect. The testimony of Dr. Simon was in fact, based upon a reading of the record, in
13   compliance with SSR83-20. His descriptions of the work available for Miller, and her classifications for work also
14   appear to the Court to be substantially consistent with 20 CFR 404.1567 and 20 CFR 416.969a.

15   The Court agrees with the Commissioner's assertions that the vocational expert's opinions that even if
16   Miller was limited or restricted to "sedentary work" she would not be considered "disabled" in accordance with
17   Rule 201.18, thus a distinction between sedentary and light work would make no difference for Miller.

18   Based on this record, the Court finds, as the Commissioner argues, that since Miller's restrictions were
19   not identical to those found in the Medical-Vocational Guidelines, there was compliance with SSR 83-20.

20   Miller's third assignment of error regarding the ALJ's decision focuses on her alleged mental impairments.
21   In that regard, and despite the substantial number of pages devoted in the record to issues involving the mental
22   issues in this case, the Court read with interest records from The Harbor Behavioral Health Care Institute. One set
23   of records emanating from a visit by Miller on January 28, 2003, Clerk's 7, pages 224-267 is helpful. Despite
24   the fact that Miller had been a patient at The Harbor since 2000, and had seen a number of different professionals
25   at that facility, there never seemed to be continually consistent diagnosis for Miller. There are numerous references

REPORT AND RECOMMENDATION - 9

1   to bipolar disorder, there is also a diagnosis from that facility that Miller was "malingering". (7, page 227), on

2   January 28, 2003. That conclusion was reached approximately 5 months after The Harbor had determined that

3   Miller had a "Schizoaffective disorder, bipolar type, probably substance induced. (7, pages 228-231).

4      The Court notes these findings in the context of its consideration of Miller's arguments that the ALJ

5   did not correctly assess her mental impairments as they related to her abilities to work. This observation is

6   supplemented by an assessment made by Dr. David Grippe which included the period from June 1, 1997 to

7   December 12, 2002. (7, pages 279-292). Dr Grippe stated:

8          Considering available documentation in MER and excluding any restrictions imposed by

9      Physical conditions claimant does not present with severe impairments in her mental functioning

10      that would limit her ability to perform gainful employment. Claimant appears able to understand,

11      carry out, and remember simple instructions. She appears able to make judgments that are commen-

12      surate with the functions of a routine job, appears able to respond appropriately to supervision,

13      coworkers and work situations and appears able to deal with changes in a routine setting.

14          Claimant may exhibit difficulty in attention, concentration and memory as well as in

15      social interaction while in a manic phase of her mental impairment. If claimant chooses to continue

16      alcohol consumption on a daily basis further deterioration in her mental status can be expected.

17      Currently, she is responding well to prescribed medicinal regimen, this could also be altered by

18      her continuous substance abuse.

19          Impairment Not Severe.

20      During her testimony in the hearing on May 27, 2009, Miller stated to the ALJ that while she had

21   problems with both alcohol and drugs when she was younger, she had quit drinking. (7-2, page 235).

22      Intertwined in this consideration of all of Miller's treatment records is the General Clinical Evaluation

23   With Mental Status completed by Dr. James R. Boone, a clinical neuropsychologist on March 15, 2006. (7-2, pages

24   118-121). Miller told Dr. Boone at that time she was unable to climb stairs, could not lift more than 20 pounds,

25   could not work because memory loss, left shoulder and knee problems, left carpal tunnel syndrome, constant low

REPORT AND RECOMMENDATION - 10

1   back pain, unspecified heart problems and Bipolar I Disorder. Dr. Boone noted in his report that he had

2   reviewed Miller's records from The Harbor. Significant to the Court within Dr. Boone's Summary and

3   Conclusions are the following comments:

4        The results of the evaluation indicate that Ms. Miller is experiencing a chronic

5        and severe psychological disturbance characteristic of Schizoaffective Disorder

6        (bipolar type)....

7        ....Although she can likely remember simple instructions and procedures, she

8        will likely have problems remembering complex instructions and work procedures. She

9        conveys the impression of Low Average range intelligence.

10        Ms. Miller exhibits mild problems with sustained concentration and persistence.

11        Occasional redirection is needed in this evaluation. She will likely have trouble maintaining

12        her attention for an 8 hour work day, performing at a consistent pace and in a timely manner,

13        working with others without being unduly distracted, and working without special supervision.

14        ....Ms. Miller may have problems asking questions of others, accepting instructions/

15        criticism from her supervisor, getting along with co-workers, interacting with the public, and

16        maintaining socially acceptable behavior.

17        ....She will likely have problems responding appropriately to potential work change,

18        maintaining attendance, coping with normal work stress, traveling to unfamiliar places and

19        setting realistic work goals. She is likely to require substantial direction and supervision.

20        Psychologically, Ms. Miller's prognosis is guarded to fair with appropriate treatment.

21        Recommendations include compliance with her psychiatric medications and intensive individual

22        psychotherapy.

REPORT AND RECOMMENDATION - 11

1         Dr. Boone does not, at any point in his Summary and Discussion, suggest, state or find

2   that Miller is disabled and unable to work. However, not withstanding Miller's allegations that she is

3   disabled, the ALJ stated in his October 15, 2009, Decision (7, page 69) that :

4               The Appeals Councils (sic) determined that claimant has no past relevant work

5               because of the low earnings reported. On the other hand, the record shows the

6               claimant worked at times as motel housekeeper and laundry worker, the last time

7               for eight months and it was "under the table." In deference to the Appeals Council's

8               opinion the Administrative Law Judge now finds no past relevant work at the sub-

9               stantial gainful level.

10         Again, the weight of the evidence does not support Miller's claims she cannot work, even

11   presupposing her allegations that she has mental impairments. A full review of the massive record in

12   this case, and the lengthy Decision filed by the ALJ, do not support Millers's allegations that the ALJ

13   failed to properly evaluate and consider her claimed mental impairments. Miller's arguments to the

14   contrary, the ALJ did in fact comply with 20CFR 416.1520(a). That conclusion is supported by the

15   findings made by Miller's evaluating neuropsychologist, which have been substantially quoted in

16   this Report and Recommendation. This Court does not find, as Miller alleges, that the ALJ merely

17   adopted the opinion of an evaluating physician at the B criteria of the Listings as his functional

18   capacity assessment. Such a determination would fly in the face of the medical records in this case.

19         The Commissioner is correct in noting that it is Miller's burden to prove her residual

20   functional capacity at step four of the sequential evaluation. It is then the ALJ's responsibility to

21   determine residual functional capacity based on all relevant evidence, including medical records,

22   observations of treating physicians and others, including a claimant's own descriptions of limitations.

23   Harris v. Barnhart, 356 F. 3d 926, 930 (8th Cir. 2004); Tindel v. Barnhart, 444 F.3d 1002, 1007 (8th Cir.2006).

24

25

REPORT AND RECOMMENDATION - 12

1    Miller's arguments that the hypothetical questions asked by the ALJ at the May 27, 2009 hearing

2    of the vocational expert were not valid because of the allegations the ALJ misused criteria in the B Listings

3    in assessing her residual functional capacity are not tenable. First, Miller's representative at the hearing failed

4    to object to the hypotheticals asked by the ALJ. Second that representative, when offered the opportunity

5    to question the vocational expert during the hearing, waived that opportunity. See, Hearing Transcript,

6    (7-2, pages 226-247).

7    The time, and the opportunity, for Miller to make her record, and her objections was during the

8    hearing on May 27, 2009, and not in this appeal. Her request that this case be remanded, again, for further

9    hearings, review and a new decision are not supported by the record in this case.

10    The ALJ's hypothetical question to the vocational expert needs to include only those impairments

11    that the ALJ finds are substantially supported by the record as a whole. Martise v.Astrue, 641 F. 3d 909, 927

12    (8th Cir.2011).

13    **V. Conclusion**

14    This Magistrate Judge is of the opinion after reviewing the record in this case, the Decision by the ALJ

15    and the submissions by the parties that the ALJ did in fact properly and appropriately undertake the

16    five-step sequential evaluation process in arriving at his decision. For the reasons stated, and the standard

17    of review the Court must employ, this Magistrate Judge finds that substantial evidence supports the

18    ALJ's conclusion that Carrie Mae Miller is not disabled within the meaning of the Act. Accordingly this

19    Magistrate Judge respectfully recommends that the Court affirm the Decision of the ALJ, and that the Clerk

20    Of Court be directed to enter judgment for the Defendant and against the Plaintiff.

21    The parties shall have 30 days from the filing of this Report and Recommendation to file any

22    and all objections, motions and other pleadings directed to this Report and Recommendation in accordance

23    and compliance with the requirements of 28 USC 636 (a)(1), and the Local Rules of this Court.

24

25

REPORT AND RECOMMENDATION - 13

Respectfully Submitted

Thomas V. Shields

U.S. Magistrate Judge*

*United States Magistrate in Recall Status

REPORT AND RECOMMENDATION - 14